IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHARRON EMPEY, Individually and as
Independent Administrator of the ESTATE
OF JAMES R. EMPEY, SHARRON EMPEY,
Individually and as Independent Administrator
of the ESTATE OF DUSTIN M. EMPEY and
DELANEY EMPEY,

    Plaintiff,

v.                                                               CIV 15-0815 KK/KBM

FEDEX GROUND PACKAGE SYSTEM, INC.,
WILLIAM L. HART, GUILLERMO BACILIO,
C.R. ENGLAND, INC., JONATHON M. REYES,
NATIONWIDE SECURE LOGISTICS, and
JAIME PONS-LEVYA,

    Defendants.

## ORDER REGARDING DISCOVERABILITY OF MEDICAL RECORDS

THIS MATTER comes before the Court following briefs filed by the parties regarding the discoverability of the parties' medical records. *Docs. 113, 115, 117, 119, 120, 122, 130, 131, 133*. The Court, having considered the briefs, exhibits and relevant law, and being otherwise fully informed, concludes that Plaintiffs must produce the following: 1) a list of all health care providers who treated each of them within the five years preceding April 12, 2015, to the present; 2) for each health care provider identified, including non-mental health providers, any records that specifically reference their emotional or psychological conditions; 3) a list of health care providers who treated James and Justin Empey within the ten years preceding their deaths; 4) all records of health care providers for Justin and James Empey from the ten years preceding their

deaths already in Plaintiffs' possession; 5) for each health care provider identified as having treated James or Justin Empey within the ten years preceding their deaths, a signed, HIPAA-complaint authorization to release medical records. Defendants William Hart, Guillermo Bacilio, Jonathan Reyes, Jaime Pons-Levya must produce only records from the medical examinations that they underwent for purposes of being medically qualified under the Federal Motor Care Safety Act ("FMCSA").

## I. BACKGROUND

This wrongful death action arises from a five-vehicle accident that occurred on April 12, 2015, on Interstate 40 near San Jon, New Mexico and that resulted in the deaths of James and Dustin Empey (hereinafter "the accident"). Plaintiff Sharron Empey was appointed the independent administrator of the estates of her husband, James, and her son, Dustin. Plaintiff Delaney Empey was a minor at the time of the death of her brother and father. In addition to the claims brought on behalf of the estates of James and Justin Empey, Plaintiffs Sharron and Delaney Empey assert claims for emotional distress and loss of consortium.

The Court held a status conference on March 24, 2016, at which counsel for the parties broached various discovery issues, including the discoverability of the parties' medical records. Some of the parties opposed informal resolution of the medical records issue and requested the opportunity to file formal briefs. The Court ordered simultaneous briefs, which are now before the Court.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 26(b), parties may obtain discovery concerning:

2

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Additionally, Local Rule 26.3(d) requires parties, under some circumstances, to produce certain medical information and records as part of their initial disclosures. Rule 26.3(d) provides:

> [i]n all cases in which the physical or mental medical condition of a party is an issue, the party whose condition is at issue must make a good faith effort to produce the following information that the disclosing party may use to support its claims or defenses, unless solely for impeachment:
>
> (1) a list of the name, address and phone number of any healthcare provider, including without limitation, any physicians, dentists, chiropractors, mental health counselors, clinics and hospitals which have treated the party within the last five (5) years preceding the date of the occurrence set forth in the pleadings and continuing through the current date;
>
> (2) all records of such healthcare providers which are already in that party's possession, which will be made available for inspection and copying by all other parties to the action;
>
> (3) for each healthcare provider, a signed authorization to release medical records form, as set forth in Appendix "A." Within fourteen (14) days after receiving medical records by use of these authorization forms, a party must make the records available for inspection and copying by all other parties to the action.

### III. ANALYSIS

**A. Medical Records of Plaintiffs Sharron and Delaney Empey**

Defendants seek medical records and information from Plaintiffs Sharron and Delaney Empey to include the execution of medical authorization forms and all medical

3

provider information for any treatment they received during the five years preceding the April 12, 2015 accident to the present. They insist that Plaintiffs have put their physical and mental health at issue by making claims for "emotional distress . . . caused by the loss of society, guidance, and companionship" and by seeking "all damages legally available" under the New Mexico Wrongful Death Act. Additionally, they maintain that they are entitled to explore whether any alleged damages for emotional distress or loss of consortium may have been pre-existing. For instance, as Defendant Bacilio notes in his brief, Plaintiff Sharon Empey, tragically, suffered a similar loss in 2002, when she lost another child. *Doc. 115* at 8 n.4.

Plaintiffs, in contrast, maintain that the production of their medical records should be limited to counseling and family doctor records and "strongly dispute" the discoverability of any other medical records. *Doc. 113* at 3. They suggest that there is "significant debate among courts and legal commentators about whether 'garden variety' claims for ordinary grief and emotional loss occasioned by the death of a spouse, parent or sibling . . . requires exposure of the claimant's mental health records." *Id.* at 2. Yet they fail to reference any particular case or commentary discussing the debate over "garden variety" claims. Nor do they cite a single wrongful death case in which emotional loss from the death of a family member was characterized as a "garden variety" claim precluding the discovery of medical records.

Even so, the Court is aware that this "garden variety" view to which Plaintiffs refer has been adopted by a number of courts.  *See, e.g., In re Sims*, 534 F.3d 117, 129 (2d Cir. 2008); *Koch v. Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007); *Diehl v. Bank of America Corp.*, No. 09cv1220, 2010 WL 4829970, *1-2 (M.D. Fla. 2010); *Ruhlmann v. Ulster*

4

Case 1:15-cv-00815-KK-KBM Document 152 Filed 07/07/16 Page 5 of 20

*County Dept. of Social Servs.*, 194 F.R.D. 445 (N.D.N.Y. 2000); *Santelli v. Electro-Motive*, 188 F.R.D. 306 (N.D. Ill. 1999); The Psychotherapist Privilege: Privacy and "Garden Variety" Emotional Distress, 21 Geo. Mason L. Rev. 117 (2013) (discussing the "garden variety" approach and indicating that it is "gaining ground"). Under this approach, courts have reasoned that a plaintiff does not place her mental health condition at issue, or waive her psychotherapist-patient privilege, merely by seeking "garden variety" emotional distress. *Ruhlmann*, 194 F.R.D. at 450.

In contrast, some courts have used the so-called "narrow approach," holding that a plaintiff only puts their mental condition at issue by asserting "severe" emotional distress, relying on communications with a mental health provider as part of her case, or by offering expert testimony on the claim of emotional distress. *See Awalt v. Marketti*, 287 F.R.D. 409, 417 (N.D. Ill. 2012). Still other courts have used a "broad approach," holding that a plaintiff places her mental condition at issue and waives any privilege to medical records by simply making a claim for emotional distress. *Id.*

Plaintiffs have not demonstrated that New Mexico state courts, the Tenth Circuit Court of Appeals, or the District of New Mexico has adopted the "garden variety" view. Moreover, the Court, in its independent research, has not discovered any New Mexico state court or Tenth Circuit Court of Appeals case applying, or even discussing, the "garden variety" approach to emotional distress damages. Defendant Federal Express suggests that, instead, "[i]t is axiomatic in New Mexico an emotional damages claim puts a party's physical/mental condition at issue." *Doc. 122* at 5. It is true that judges in the District of New Mexico seem to favor the broad approach to emotional distress damages, finding plaintiffs to have placed their mental conditions at issue and subject to discovery

5

simply by making claims for emotional distress damages. *See, e.g.*, *Madrid v. Don Kelly Constr., Inc.*, No. 12cv0451 JB/GBW, 2013 WL 1897826, at *9 (D.N.M. Apr. 24, 2013) (Browning, J.) (explaining, in a diversity action, that a plaintiff's emotional damages claim placed his physical or mental condition at issue and would have entitled the defendant to his medical records if the plaintiff had seen a doctor during the relevant time period); *Gonzales v. Goodyear Tire & Rubber Co.*, No. 05cv0941 BB/LFG, Doc. 150 (D.N.M. July 28, 2006) (Garcia, J.) (reasoning that the characterization of "garden variety" damages is generally only applicable to requests under Fed. R. Civ. P. 35 and that by alleging only "garden variety" damages, a plaintiff is not absolved from providing mandatory disclosures under Local Rule 26.3.); *Drain v. Wells Fargo Bank, Minnesota, NA*, No. 04cv0399 MV/KBM, Doc. 197 (D.N.M. Aug. 1, 2005) (Vazquez, J.) (affirming the Magistrate Judges' order compelling disclosure of healthcare information required by Local Rule 26.3(d) in a consumer protection case, because the plaintiffs put their mental health at issue by claiming emotional distress damages).

But even assuming that this Court *would* be inclined to adopt the "garden variety" view, it remains unclear that Plaintiffs' emotional distress claims could be characterized as such. For one thing, "garden variety" emotional distress has proven difficult to define. As one court observed, the "problem with these cases is definitional and stems from the imprecision and elasticity of the phrase 'garden variety.'" *Flowers v. C.O. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011). The varied definitions of "garden variety" emotional distress claims supplied by courts include:

> the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized; the generalized insult, hurt feelings and lingering resentment which anyone could be expected to feel given the defendant's conduct; the normal distress experienced as a result of the

6

> claimed injury; the negative emotions that plaintiff experienced essentially as the intrinsic result of the defendant's alleged conduct, but not the resulting symptoms or conditions that she might have suffered; the generalized insult, hurt feelings, and lingering resentment that does not involve a significant disruption of the plaintiff's work life and rarely involves more than a temporary disruption of the claimant's personal life; the ordinary or commonplace, simple or usual; those that do not involve psychological treatment or adversely affect any particular life activities; those where the plaintiff describes his or her stress in vague and conclusory terms, but does not describe their severity or consequences; or those that involve the general pain and suffering and emotional distress one feels at the time of the complained-of conduct, but not any ongoing emotional distress.

*Id.* at 225-26 (collecting cases) (citations and internal quotations omitted).

Because Plaintiffs have not yet been deposed or questioned concerning the extent of their emotional distress, their claims have not been fleshed out. Consequently, the Court is left with only the factual allegations of the Complaint and the representations in the parties' briefs to assess the extent of their emotional distress claims. The Complaint itself does not elaborate on these claims other than to assert that Defendants are liable for "emotional distress to . . . Sharron Empey and . . . Delaney Empey caused by the loss of society, guidance, companionship and for Sharon Empey, loss of intimate relations." *See, e.g., Doc. 101* at ¶ 34. And Plaintiffs' brief only suggests that they may have received counseling and that Plaintiff Sharron Empey was prescribed an anti-depressant after the accident. *Doc. 113* at 2-3. Plaintiffs do not identify any medical records as exhibits in the parties' Joint Status Report and Provisional Discovery Plan, nor do they identify psychiatrists or counselors as witnesses. *See Doc. 145*. At the same time, however, Plaintiffs have not stipulated that they will not introduce any such records or rely upon expert medical testimony to establish emotional distress damages.

7

Under these circumstances, and given its understanding of the facts of this case, the Court is unwilling to classify Plaintiffs' emotional distress claims as "garden variety." There can be little question that Plaintiffs will be emotionally impacted for the remainder of their lives by the deaths of their spouse/father and son/brother as a result of the tragic accident at issue. According to Defendants, Plaintiffs have stated that they will seek a 150 million dollar compensatory damages award and an additional 1.1 billion dollar punitive damages award. *Doc. 115* at 6 n.3. A request for damages in this range suggests that Plaintiffs have been completely devastated by deaths of Decedents and that their lives have been significantly disrupted. Although they do not discuss the severity of their emotional distress in their Complaint or their brief, the Court is unwilling to conclude that their emotional distress is not significant enough to transcend "garden variety" emotional suffering. *See Carter v. BNSF Railway Company*, No. Civ. 00-0341 MV/RLP (D.N.M. Mar. 28, 2001) (J. Puglisi) (holding that a surviving son's medical records pertaining to his mental and emotional condition were discoverable, where he sought wrongful death damages for "extreme grief and mental and emotional anguish which will continue for the remainder of [his] life' caused by his father's death."). As such, the Court finds that Plaintiffs have put their mental conditions at issue by seeking emotional distress damages in this wrongful death case.

Having found Plaintiffs to have put their mental health conditions at issue, the Court must grapple with a more difficult issue: the scope of medical records that must be produced. Plaintiffs contend that even if their mental conditions are at issue, their physical conditions are not. *Doc. 113* at 4. They maintain that records from their "gynecologists, chiropractors and other medical doctors that address physical ailments

8

and issues have zero connection to [their] grief and loss." *Id.* at 4. For this proposition, Plaintiffs rely upon *Manessis v. New York City Dept. of Transportation*, No. 02cv0359, 2002 WL 31115032 (S.D.N.Y. Sept. 24, 2002). There, the Southern District of New York reasoned that although the plaintiff's claims for emotional distress placed his mental condition at issue and undermined his claim of privacy as to mental health records, the defendants were not "entitled to pursue discovery into treatments [the plaintiff] may have received for physical ailments." *Id.* at *2.

Plaintiffs' position – that medical records for any treatment of their physical conditions are not discoverable – has some appeal. After all, the Complaint does not assert any physical injuries to Plaintiffs, and Plaintiffs have maintained that their physical conditions are irrelevant. On the other hand, the Court is mindful that severe emotional distress often has physical manifestations, which may be memorialized in medical records from a variety of healthcare providers. Conversely, unrelated physical ailments or stressors may affect a person's emotional wellbeing, and pre-existing emotional distress is, of course, relevant to the issue of damages. Patients also frequently discuss their emotional or psychological condition with medical providers who treat physical conditions, particularly when offering general background, rendering such records potentially relevant to the issue of emotional distress damages. Unfortunately, the Court is unable to predict which medical records may ultimately be relevant to Plaintiffs' claims for emotional distress and loss of consortium. Presumably for these same reasons, Local Rule 26.3 requires disclosure of **all** medical providers, including those that treated both physical and mental conditions, anytime a party's physical **or** mental medical condition is at issue. *See* D.N.M.LR-Civ. 26.3(d).

But even if Plaintiffs' medical records are relevant to the claims in this case, the Court cannot entirely disregard Plaintiffs' physician-patient privileges under New Mexico law[1] as to records addressing physical conditions. Under New Mexico law "[i]f a patient relies on a physical, mental or emotional condition as part of a claim . . . no privilege shall apply concerning confidential communications made *relevant to that condition*," NMRA 11-504(D)(3) (emphasis added).

Notably, Plaintiffs' position that they have not waived their privileges with respect to their physical conditions is consistent with the New Mexico Court of Appeals' interpretation of New Mexico privilege law in *Pina v. Espinoza*, 29 P.3d 1062 (Ct. App. 2001). In *Pina*, the court determined that the trial court abused its discretion by ordering the plaintiff to execute a blanket release for medical records. *Id.* at 1067. The court reasoned that the plaintiff had "not necessarily put her entire medical history in issue by filing a lawsuit which seeks damages for pain and suffering or loss of enjoyment of life." *Id.* According to the court, the "contours of [the plaintiff's] damages claims" determined the extent to which she placed aspects of her medical history at issue. *Id*; *accord Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 365-66 (D. Colo. 2004) (determining that because the plaintiff did not allege physical injuries, the defendant was only entitled to discovery of her medical records to the extent that they specifically referenced or described her emotional or psychological condition).

Because it is not apparent that Plaintiffs have put their physical conditions at issue, the Court will not require Plaintiffs to execute blanket medical records releases for all of their medical providers. *See Pina*, 29 P.3d at 1067 (reasoning that by ordering a

---

[1] As a diversity action, state law governs the issue of privilege here. *See* Fed. R. Evid. 501.

blanket medical release the trial court erroneously treated the plaintiff's entire medical condition as the unit of analysis, where NMRA 11-504(D)(3) "speak[s] in terms of communications, not types of documents"). Nor will the Court require production of all types of medical records.  Instead, the Court will require Plaintiffs to produce to Defendants:  1) a list of all health care providers who treated them within the five years preceding April 12, 2015, to the present; and 2) any medical records, including from non-mental health providers, which specifically reference their emotional or psychological conditions. For any medical records addressing only physical injuries or conditions unrelated to the claims and allegations in this case, Plaintiffs may withhold such records and provide a privilege log to Defendants.[2]  See D.N.M. LR-Civ. 26.3(e) ("When information, records or a release subject to this rule is withheld on a claim that it is privileged or subject to objection, . . . the claim must be made expressly in writing and must be supported by a description of the nature of the documents, or things not produced that is sufficient to enable the demanding party to contest the claim.").

However, if Plaintiffs' deposition testimony or discovery responses later suggest that their physical conditions are in fact relevant to their emotional distress damages, Defendants may renew their request for additional medical records.

### B. Medical Records of James and Justin Empey

Defendants also seek medical records, medical provider histories, and medical authorizations for James and Justin Empey ("Decedents") for the period from April 12, 2000, to April 12, 2015. They insist that Plaintiffs have placed at issue Decedents'

---

[2] Although the Court acknowledges that it will be more burdensome for Plaintiffs to produce their medical records to Defendants than it would have been to execute blanket medical authorizations, it is Plaintiffs who must review their records to determine whether the physician-patient applies. As such, for any non-mental health providers, Plaintiffs must request their own records and either produce them to Defendant or include them in a privilege log to Defendants.

medical conditions of by seeking damages under the New Mexico Wrongful Death Act. Defendants contend that they are entitled to explore any conditions in Decedents' physical or mental health that may have impacted their life expectancies, enjoyment of life, or economic damages. In short, they assert that Decedents' medical records are within the scope of discovery and proportional to the needs of the case.

According to their Complaint, Plaintiffs seek, for each wrongful death claim and for each Decedent, "all damages legally available under the New Mexico Wrongful Death Act, including pain and suffering experienced by [Decedent] between the time of injury and his death, lost earnings, [and] the value of [Decedent's] life." *See, e.g., Doc. 101* at ¶ 34. Plaintiffs' claims mirror New Mexico Jury Instruction UJI 13-1830, which permits recovery in wrongful death cases for pain and suffering experienced by the deceased between the time of injury and death, lost earnings and earning capacity, and the value of the deceased's life apart from his earning capacity, among other types of damages. *See* UJI 13-1830.

Notably, pursuant to UJI 13-1830, a jury must take into consideration a deceased's "health, habits, and life expectancy" when determining lost earnings and lost earning capacity. *See id*. Relatedly, a separate New Mexico jury instruction used in wrongful death cases, UJI 13-1831, provides that the jury must consider a deceased's "health, habits and other activities" when determining his life expectancy. *See* UJI 13-1831. In other words, under New Mexico law, a jury must consider a deceased's life expectancy, and thereby his health and habits, in determining lost earnings damages. *See BNSF Ry. Co. v. LaFarge Sw., Inc.*, Civ. No. 06-1076 MCA/LFG (D.N.M. Jan. 28 2009) (Armijo, J.)

In this regard, Plaintiffs contend that they "do not make any claim for lost earnings or any other economic loss." *Doc. 113* at 5. However, as Defendant Federal Express points out, they have not amended their Complaint to omit claims for economic loss; nor have they entered any stipulation regarding these claims. *Doc. 122* at 3 n.1. As it stands, Plaintiff's Complaint explicitly asserts a claim for "lost earnings." *Doc. 101* at ¶ 34. Decedents' health, as a component of their earning capacity and life expectancy, is clearly at issue. Because Decedents' health and life expectancy is a component of their economic damages, no privilege applies to their medical records. *See* NMRA 11-504 (D)(3) ("After a patient's death, should any party rely on a patient's physical, mental, or emotional condition as part of a claim . . . , no privilege shall apply for confidential communications made relevant to that condition.")

Further, even aside from Plaintiffs' claims for lost earnings, Decedents' physical and mental conditions are relevant to the damages Plaintiffs seek for their loss of enjoyment of life. *See Romero v. Byers*, 872 P.2d 840, 846 (N.M. 1994) (reasoning that "the jury in a wrongful death action [must] determine fair and just compensation for the reasonably expected nonpecuiary rewards the deceased would have reaped from life as demonstrated by his or her health and habits"); *see also Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1245 (10th Cir. 2000) (finding permissible an economic expert's interpretation of hedonic damages, which included four areas of human experience, including "the ability to enjoy the occupation of their choice, activities of daily living, social leisure activities, and internal well-being") (internal quotations omitted). Thus, Plaintiffs have put Decedents' physical and mental conditions at issue by seeking damages for their loss of enjoyment of life. Although Plaintiffs have been unwilling to disclose records

13

beyond those from Decedents' family doctor, and for James Empey his pulmonary or sleep doctors, and only for a period of five years before the accident at issue, Defendants are entitled to more, particularly in a case in which Plaintiffs intend to seek compensatory damages in excess of eight figures. The medical records that Defendants seek are relevant, unprivileged, and proportional to the needs of the case.

Ultimately, the Court concludes that, because Plaintiffs have put at issue Decedents' physical and mental health, Defendants are entitled to the medical information for Decedents contemplated in Local Rule 26.3 but for a period of ten years.[3] That is, Plaintiffs must provide to Defendants: 1) a list of all health care providers which treated Decedents within the ten years preceding their deaths; 2) all records of healthcare providers during this period already in Plaintiffs' possession; and 3) for each healthcare provider identified, a signed HIPAA-compliant authorization to release medical records.

### C. Medical Records of Defendant Drivers

In addition to Defendants' requests for medical records, Plaintiffs also request medical records from Defendants William Hart, Guillermo Bacilio, Jonathan Reyes, and Jaime Pons-Levya ("Defendant Drivers"). Specifically, they seek medical authorizations for the Defendant Drivers' family, pulmonary, and sleep doctors for the five years preceding the accident, asserting that they will help to determine whether any medical conditions were a contributing cause of this collision. Plaintiffs characterize this request as a reciprocal one, explaining that they are willing to disclose these same records for

---

[3] Although Local Rule 26.3(d) requires, as part of a parties' initial disclosures, health care providers and releases for only five years preceding the date of the occurrence at issue, Defendants have requested such records for a fifteen-year period. The Court finds this request slightly overbroad and will restrict Defendants to Decedents' medical records from the ten years preceding the April 12, 2015 accident.

James Empey. Defendant Drivers, however, maintain that their medical records are not discoverable for three reasons: 1) because they were each medically-qualified on the date of the subject accident; 2) because they have not placed their medical conditions at issue in this litigation; and 3) because they hold valid privileges against the disclosure of their medical records.

First, it appears that on the date of the accident, Defendant Drivers were medically-qualified under federal law. *See, e.g., Doc. 115*, Ex. B (Bacilio's Medical Examiner's Certificate); *Doc. 119*, Ex. A (Hart's Medical Examiner's Certificate). Each driver, as the holder of a Commercial Drivers' License, was subject to the Federal Motor Carrier Safety Act ("FMCSA") and its regulations, which require drivers to be medically certified to operate a commercial motor vehicle. 49 C.F.R. § 391.41(a)(1)(i) (2013). Pursuant to the relevant regulations, a driver is physically qualified to drive a commercial motor vehicle if he 1) meets the physical qualification standards, and 2) has complied with the medical examination requirements. 49 C.F.R. § 391.41(a)(3)(i). The physical qualification standards preclude drivers with certain conditions from operating commercial motor vehicles. *Id.* These conditions include diabetes, certain cardiovascular diseases, respiratory dysfunction, high blood pressure, certain muscular, neuromuscular or vascular diseases, epilepsy or other conditions likely to cause loss of consciousness, alcoholism, drug use, or mental, nervous, organic, or functional diseases likely to interfere with the ability to safely drive a commercial vehicle. *See* 49 C.F.R. § 391.41(b)(2).

Additionally, the regulations provide instructions for medical examiners who perform physical examinations for drivers subject to the FMCSA. *See* 49 C.F.R.

§ 391.43. The medical examiners are instructed to "carefully" conduct examinations of prescribed areas[4] and to note the history or presence of relevant conditions. *Id.* Ultimately, the examiner is asked to "certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to safely operate a commercial motor vehicle." *Id.* Likewise, the driver must certify that the information that he provided to the medical examiner was "complete and true" and acknowledge that false or incomplete information may invalidate the examination and the medical examiner's certificate. 49 C.F.R. § 391.43.

Plaintiffs have not offered evidence or made an allegation that any Defendant Driver suffered from a particular disqualifying medical condition. While the Complaint does assert that certain drivers were inattentive "likely due to fatigue or distraction," *Doc. 101* at ¶¶ 28, 101, Plaintiffs do not expand upon the basis for this conclusion, leaving the Court to assume that the mere fact of the collision's occurrence provided that basis. Defendant Drivers insist that the evidence before the Court demonstrates that they were free from any medical conditions that would have interfered with their ability to safely drive a commercial vehicle.

Plaintiff argues that the Defendant Drivers' respective medical certification cards are insufficient to demonstrate that they were in good health at the time of the accident because "many drivers do not disclose all relevant medical information to the certifying physician." *Doc. 113* at 7. However, without any evidence that any of the Defendant Drivers failed to disclose relevant medical information, Defendants maintain that Plaintiffs

---

[4] The prescribed areas of examination include: general appearance and development, eyes, ears, heart, blood pressure, lungs, abdomen and viscera, genital and rectal areas, neurological, spine and musculoskeletal, and extremities. 49 C.F.R. § 391.43.

16

should not be permitted look beyond their medical certifications and to engage in what they describe as an "unwarranted and highly intrusive fishing expedition based on nothing more than unfounded speculation." *Doc. 115* at 12-13.

Absent some evidence suggesting that a Defendant Driver suffered from a specific medical condition that may have contributed to the accident, the Court finds that the drivers' certifications that they were in good health and able to safely operate a commercial vehicle weighs against permitting discovery into their family, pulmonary, or sleep doctor medical records. Simply put, the Court is hesitant to allow significant intrusions into Defendant Drivers' records without some compelling, non-speculative reason for doing so.

Second, Defendants contend that, unlike Plaintiffs, Defendant Drivers have not placed their physical or mental conditions at issue. For instance, Defendant Drivers do not assert damage claims or seek recovery for any mental or physical injuries. Nor have any them claimed as a defense that they suffered a lapse of consciousness or other medical condition at the time of the accident. The Court agrees that Defendants did not, by virtue of being haled into Court by Plaintiffs, place their medical conditions at issue. *See State ex rel. Hayter v. Griffin*, 785 S.W.2d 590, 593-95 (Mo. Ct. App. 1990) (holding that the defendant did not place his medical condition at issue simply by denying allegations in the complaint and asserting comparative negligence); *see also Allen v. Brown*, Civ. No. 14cv0246 GBW/LAM, Doc. 34 (D.N.M. Sept. 5, 2014) (Martinez, J.) (granting a protective order regarding the defendant's health and medical records in a personal injury case, where the defendant did not put his medical condition at issue in his affirmative defenses).

Finally, Defendant Drivers insist that their medical records are privileged. As with the requests for Plaintiffs and Decedents' medical records, the requests for Defendant Drivers' medical records implicate the physician-patient privilege. Under New Mexico law, patients have "a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purpose of diagnosis or treatment of the patient's physical, mental or emotional condition . . . among the patient, the patient's physician or psychotherapist." NMRA 11-504(B).

As the Court previously discussed, however, there exists an exception to this privilege. That is, the physician-patient privilege does not prohibit production of medical records when "the patient relies upon [his medical] condition as an element of the patient's claim or defense." NMRA 11-504(D)(3). But, here, the Defendant Drivers do not rely upon a medical condition as an element of any claim or defense. Plaintiffs do not reference any authority that would support a finding that Driver Defendants have somehow waived their physician-patient privilege by defending a wrongful death action and denying Plaintiffs' allegations that they were inattentive. Plaintiffs cannot, by virtue of their own claims, waive the privilege on behalf of Defendant Drivers. Consequently, Defendant Drivers' physician-patient privileges remain intact, and their medical records enjoy protection.

In sum, the Court is unwilling to permit Plaintiffs to breach Defendant Drivers' physician-patient relationships based upon speculation as to a medical condition that may have possibly existed and was overlooked by the medical examiner who certified the driver as medically qualified to drive commercial vehicles.

On the other hand, the Court finds that the examinations of Defendant Drives required by the FMCSA do not fall within the scope of the physician-patient privilege, which only protects confidential communications "made for the purpose of diagnosis or treatment." NMRA 11-504(B). Further, Defendant Drivers have, in effect, put these examinations at issue by relying upon them to demonstrate that they were in good health and fit to drive commercial vehicles at the time of the accident.  *See Doc. 115* at 9-13; *Doc. 117* at 2; *Doc. 119* at 2-3; *Doc. 120* at 2.  Accordingly, the Court will compel their production.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiffs shall produce:  1) a list of all health care providers who treated each of them within the five years preceding April 12, 2015, to the present; 2) for each health care provider identified, including non-mental health providers, any records that specifically reference their emotional or psychological conditions; 3) a list of health care providers who treated James and Justin Empey within the ten years preceding their deaths; 4) all records of health care providers for Justin and James Empey during this period already in Plaintiffs' possession; and 5) for each health care provider identified as having treated James and Justin Empey, a signed, HIPAA-complaint authorization to release medical records.

**IT IS FURTHER ORDERED** that Defendants William Hart, Guillermo Bacilio, Jonathan Reyes, Jaime Pons-Levya shall produce records from the medical examinations that they each underwent for purposes of being medically qualified under the Federal Motor Care Safety Act ("FMCSA").

Dated this 7th day of July, 2016.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE

20